<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' DISTRICT COUNCILS and LOCAL 325, LIUNA,<br><br>　　　　　　　　　　　　Petitioners,<br><br>v.<br><br>MOLFETTA INDUSTRIES CO., INC. and MOLFETTA CONSTRUCTION CO.,<br><br>　　　　　　　　　　　　Respondents. | Civ. No. 08-02756<br><br>**O P I N I O N** |

*Appearances by:*

KROLL HEINEMAN, LLC
By: Raymond G. Heineman, Esq.
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830

*Attorneys for Plaintiff*

LAW OFFICES OF PAUL I. WEINER
By: Paul I. Weiner, Esq.
301 South Livingston Ave.
Suite 301
Livingston, New Jersey 07039

*Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

Plaintiffs, New Jersey Building Labors' District Councils and Local 325, Laborers' International Union of North America (collectively, the "Union"), commenced this action on June 4, 2008, petitioning to confirm a grievance arbitration award, pursuant to Section 301 of the Labor-Management Relations Act of 1947 (the "Taft-Hartley Act"), 29 U.S.C.A. § 185.  They sought enforcement of a labor arbitration award, of Arbitrator Gerard Restaino (the "Arbitrator"). The award resolved a dispute between the Union and Defendants, Molfetta Industries, Co. Inc., and Molfetta Construction Co. (collectively "Molfetta"), regarding the applicability of a collective bargaining agreement to the Jackson and Observer Highway job site, on which Molfetta Construction worked in 2007 without Union laborers.  Molfetta filed a petition on June 25, 2008, seeking to vacate the arbitration award.  Because the Court has no common law or statutory grounds on which it can overturn the arbitrator's award, the arbitration award is confirmed.

## I. BACKGROUND

**1. The CBA**:  On December 13, 2002, Molfetta president, Michael Nirchio, signed a statewide collective bargaining agreement with the Union (the "CBA") on behalf of Molfetta Industries.  On March 5, 2003 he signed a short form agreement on behalf of Molfetta Construction which, by reference, incorporated the terms and provisions of the CBA.

The CBA states that Molfetta must offer the Union the first opportunity to furnish laborers and apprentices for its contract work throughout New Jersey before proceeding to hire from other sources.  It states that its terms are applicable at any work site under Molfetta's name or

> . . . under the name of another entity (whether a corporation, company, partnership, joint venture, or any other business entity) where the Employer, including its owners, stockholders, officer, directors, or partners, exercise either directly or indirectly (such as through family members or company employees) any significant degree of ownership, management or control . . .

The CBA provides that the "relationship between the parties is fully and exclusively set forth by [the CBA], and no other means, oral or written." Its arbitration clause states that any grievance or dispute involving the interpretation or application of the CBA should be submitted to the New Jersey State Board of Mediation for final and binding arbitration. Finally, the CBA contains an "escape" clause which states that the CBA continues in full force and effect after April 30, 2007, the termination date, unless a signatory who desires to open negotiations expresses intention to do so ninety days before the termination date, or thirty days before April 30th of each succeeding year.

Molfetta contends that the above provisions do not apply to Molfetta Construction. Specifically, Molfetta alleges that Molfetta Industries entered into the CBA with the understanding, per discussion with Union representative Louis Mosca, that Molfetta would be treated as a double-breasted entity, in which Molfetta Industries would be bound to the CBA but Molfetta Construction would not. In an affidavit in support of Molfetta's petition to vacate the arbitration award, Nirchio stated that in March, 2004, Mosca approached him to request that Molfetta hire Union employees for a project on which Molfetta Construction was working, and proceeded to solicit a $5,000 bribe from Molfetta, saying that in exchange he would take care of the double-breasted entity problem. Nirchio further stated that when he declined to pay Mosca $5,000, Mosca disavowed the verbal agreement which Molfetta claims allowed it to function as a double-breasted entity.

In September 2007, Molfetta Construction engaged in work for the Jackson and Observer Highway job in Hoboken, New Jersey. It did not hire Union workers. In response, the Union filed a request for arbitration to determine whether or not this was a violation of the CBA.

**2. The Arbitrator's Decision:** On January 3, 2008, an arbitration hearing was held at the

New Jersey State Board of Mediation. The parties submitted the following issue:

> Did the Employer violate the collective bargaining agreement by failing to apply it to the Jackson Observer Highway job site in Hoboken, New Jersey? If so, what shall be the remedy?

On April 11, 2008, the Arbitrator decided that Molfetta Construction was bound by the terms of the CBA and, consequently, had failed to apply it to the Jackson Observer Highway project. The Arbitrator stated that the CBA had no "ambiguity or varied interpretation to the language governing a signatory employer" and allowed no "double-breasted operation with Mr. Nirchio because Section 17.20 of the [CBA] prohibits that." The Arbitrator noted that Molfetta offered no evidence to support its claim that Mosca tried to extort $5,000, and found unconvincing Molfetta's argument that Mosca's recent indictment was relevant to the arbitration proceedings, stating that it was "irrelevant . . . because the instant matter only deals with the contract and nothing outside the contract." Finally, the Arbitrator noted that Molfetta failed to take advantage of the CBA's escape clause, which would have allowed it to remove itself as a signatory to the CBA. The Arbitrator awarded the Union $76,356.00 in lost wages, as well as arbitration costs, accounting and other professional investigative fees.

On May 20, 2008, Molfetta requested that the Arbitrator re-open the hearing because a witness had come forth to testify that it could corroborate Molfetta's allegation regarding Mosca's solicitation of the bribe. The Arbitrator declined to re-open the hearing.

The Union now seeks confirmation of the Arbitrator's April 11, 2008, award. Molfetta seeks to vacate the Arbitrator's decision or remand it for further arbitration.

## II. DISCUSSION

**A. Standard for Review**

"In a proceeding to confirm or vacate an arbitration award, a court's review is exceedingly narrow." Eichleay Corp. v. International Ass'n of Bridge, etc., 944 F.2d 1047, 1055-56 (3d Cir. 1991). Despite the high level of deference with which a district court must review an arbitrator's award, a district court is "neither entitled nor encouraged to rubber stamp the interpretations and decisions of arbitrators." Matteson v. Ryder Sys., 99 F.3d 108, 113 (3d Cir. 1996). The district court still "maintain[s] a significant role in the labor arbitration process; [it has] not been relegated to the status of merely offering [a] post-hoc sanction for the actions of arbitrators" and "rare though they may be, there will be instances when it is appropriate for a court to vacate the decision of an arbitrator." Id. at 113-114.

There are both statutory and common law grounds under which a district court may vacate an arbitration award. Pursuant to the Section 10 of the Federal Arbitration Act ("FAA"), an award may be vacated:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> (4) Where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made . . .

9 U.S.C. § 10(a). The Court of Appeals for the Third Circuit recognizes three additional common law grounds under which a district court may vacate an arbitration award. An award may be vacated if it: (1) manifestly disregards the law; (2) cannot be justified in any rational way; or (3) violates an explicit public policy.

In this case there have been no allegations that the Arbitrator committed any fraud, was corrupt or biased, or exceeded or imperfectly executed his powers. Nor have there been any allegations that the Arbitrator manifestly disregarded the law or that the arbitration award did not derive from the essence of the CBA. Rather, Molfetta argues that (1) the Arbitrator erred in failing to appreciate the significance of a federal indictment against Mosca; (2) the Arbitrator erred in refusing to hear testimony of a newly found witness; and (3) the arbitration award violates public policy.

**B. Relevance of Federal Indictment:** Molfetta urges the Court to vacate the arbitration award because it violates Section 10 of the FAA, which states that an arbitration award may be vacated "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).

The Court of Appeals has stated that "while literally construed § 10[(a)(3)] would make all rulings by arbitrators excluding evidence reviewable by the courts," the statute "cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." Newark Stereotypers' Union v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968). Rather, an Arbitrator's decision should stand unless the error "so affects the rights of a party that it may be said that [the party] was deprived of a fair hearing." Id. at 437.

Molfetta argues that Mosca's federal indictment, which includes charges of soliciting bribes in exchange for favors in his capacity as a Union official, deserves the Arbitrator's close scrutiny because Molfetta relied upon Mosca's assurances that it would be treated as a double-breasted entity when it entered into the CBA. The Arbitrator stated, however, that "while Mr.

6

Nirchio's attorney cleverly and adroitly argued that there was an understanding offered by Mr. Mosca that Molfetta Industries was not going to be a signatory to a Union contract, there was nothing in the record to support that position."

Had the Arbitrator scrutinized Mosca's indictment as Molfetta urged, he would have done so for the purpose of considering the alleged understanding that Molfetta could exist as a double-breasted entity. However, as the Arbitrator noted, there was no evidence that would allow him to proceed with analysis of whether the parties indeed had a verbal understanding contrary to the CBA. Furthermore, whether or not Mosca solicited a bribe from Molfetta does not change the fact that Molfetta relied on this alleged understanding with Mosca that contradicted an express provision in the CBA. The parties specifically tasked the Arbitrator with determining whether or not Molfetta violated the CBA, and the Arbitrator in turn appropriately focused his analysis on the provisions of the CBA.

The evidence relating to the alleged bribe is not even relevant to whether or not Molfetta violated the CBA, and as such the Arbitrator's decision not to scrutinize Mosca's indictment has not deprived Molfetta of a fair hearing. Therefore, the Arbitrator committed no error by failing to appreciate the significance of Mosca's federal indictment.

C. **Arbitrator's Refusal to Hear New Testimony:** Molfetta also argues that the Arbitrator erred in refusing to re-open the hearing when a witness came forward to confirm and corroborate Molfetta's assertions that Mosca solicited a bribe. The Union argues that Molfetta is barred from re-opening the case because his reason for requesting that it be re-opened does not fall into one of the exceptions allowed under the functus officio rule.

Functus officio, a common law doctrine which bars an arbitrator from revisting the merits

of an award, "is motivated by a perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressuring for a different outcome and also by the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to re-convening than a court." Office Workers v. Brownsville General Hospital, 186 F.3d 326, 331 (3d Cir. 1999). The Court of Appeals for the Third Circuit recognizes the following three exceptions under which an arbitration proceeding may be re-opened. "(1) An arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 332 (3d Cir.1991).

Molfetta makes reference to the first exception, stating that an Arbitrator is allowed a mistake. However, the Court of Appeals has stated that this exception is "designed for cases of clerical mistakes or obvious errors of arithmetic computation." Id. at 332. There is no clerical or arithmetic mistake apparent on the arbitration award.

With regard to the second exception, the Arbitrator did not leave undecided a particular issue submitted by the parties. Although in isolation the Arbitrator's statement that there were "no witnesses or documents or any tape recorded device introduced into evidence to show [the bribe] in fact did actually occur," could be construed as requiring more information to decide that particular issue, the Arbitrator's further analysis of the issue makes it clear that he considers the bribe irrelevant to the issue of whether or not Molfetta Construction violated the CBA. He states

"whatever may have occurred in relationships between Mr. Nirchio and Local 325 prior to the matter being brought before me is irrelevant."

Finally, the third exception does not apply to this case, as it is reserved for incidents of ambiguity. For example, the Court of Appeals upheld a district court's re-submission of an issue to an arbitration panel for clarification as to whether an amount paid to one party by the other constituted a deposit or a payment on account. La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 572, n.13 (3d Cir. 1967). Such ambiguity, however, does not exist in the Arbitrator's award. Accordingly, this Court finds no applicable exception to the doctrine of functus officio in which could allow the Arbitrator to re-open the hearing.

**D. Public Policy:** Molfetta finally argues that the Arbitrator's award violates public policy because the Arbitrator strictly interpreted the collective bargaining agreement and therefore did not take into consideration Mosca's federal indictment. To warrant vacatur on public policy grounds, the Court of Appeals requires that the arbitration award violate a well-defined and dominant public policy ascertained by reference to positive law, rather than general considerations of supposed public interest. A district court may vacate an arbitration award on public policy grounds if the award violates "a well-defined and dominant public policy." Hruban v. Steinman, 40 Fed. Appx. at 724 (quoting Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993)). To sustain a finding that an award violates public policy, the court must define the public policy "by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id. at 360.

The Arbitrator's task, as presented by the parties and in conjunction with the arbitration clause in the CBA, was to determine whether Molfetta Construction violated the CBA when it

9

declined to hire union workers for the Jackson and Observer project.  In reaching his decision, the Arbitrator focused on the terms of the CBA rather than the contradictory understanding that Molfetta alleges, for which there is no evidence in the record.  It was within the Arbitrator's power, under the FAA and common law, to examine the CBA and to determine which extrinsic evidence, if any, was appropriate for consideration.  As discussed above, the Court agrees with the Arbitrator's decision that evidence relating to the alleged bribe and to Mosca's federal indictment was not relevant to the issue of whether or not Molfetta Construction violated the terms of the CBA at the Jackson and Observer site.  Therefore, this Court does not find that the arbitration award should be set aside on public policy grounds.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for an order enforcing the Award will be granted.  The Court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: August 13, 2008